UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.                                        Criminal Case No. 2:15-cr-127-JDL

TODD RASBERRY


DEFENDANT'S MOTION TO SUPPRESS

NOW COMES the Defendant, by and through his undersigned counsel, and moves to suppress all evidence obtained as a result of the unlawful arrest of the Defendant, at gunpoint, and later in handcuffs, all without probable cause or exigent circumstances, in violation of the Defendant's constitutional rights against unreasonable searches and seizures, as follows:

1.  The Defendant is charged with Possession with Intent to Distribute Heroin, and Possession with Intent to Distribute Cocaine, both currently pending in the United States District Court.

2.  On or about 7/15/15, the Defendant was detained without a warrant at the America's Best Value Inn in Scarborough, Maine.

3.  The detention was based upon the statements of a detained witness named Julie Wilson, who told the police that she was delivering drugs for a male from New York that she knows as "Champ" or "Champagne."

4.  She told the police that Champagne was currently in room 109 of America's Best Value Inn in Scarborough, Maine.

1

5.  She told the police that she had rented room 109 in her name and had a key to room 109 with her.

6.  She told the police that she believed that Champagne was in the room alone and would become suspicious and flee if Wilson did not continue to answer her phone when called by Champagne and by drug customers.  She did not mention that Champagne was either armed or dangerous.

7.  She then executed a written consent to search room 109, which was rented in her name, and to which she provided the police with her key.

8.  At least four uniformed and armed police officers arrived at room 109 shortly thereafter.  They tried the room key but it did not work.

9.  According to the Affidavit of Special Agent Paul Wolfe, "I then knocked on the door and it was opened by a male I recognized as Rasberry.  I explained that we were there to search the room and I entered with two other officers.  Rasberry did not voice any objections."

10.  According to the Defendant, the police entered with guns drawn, not waiting for him to consent or to withhold consent to enter and to search.

11.  Immediately upon entering the room with guns drawn, the police handcuffed the Defendant, telling him that he was not under arrest, just "detained," and proceeded to conduct a sweep of the room.

12.  No drugs or weapons were found in the room.

13.  The Defendant, meanwhile, was patted down by one officer, who emptied the Defendant's pockets, and did not find any contraband on him.

14.  After participating in the search of the room, Agent Paul Wolfe then directed his attention to the Defendant, and asked whether the Defendant had already been patted down.

15.  The Defendant advised that another officer had already searched him and found nothing.

16.  Agent Wolfe then conducted a second pat down of the Defendant, which disclosed the presence of drugs in his possession, hidden in his underpants.

17.  Since Terry, the Terry exception allowing detentions without probable cause has been broadened to encompass other situations where officers may make brief investigation stops and detain individuals upon reasonable suspicion that they may have committed, are committing, or are about to commit a crime.  Flowers v. Fiore, 359 F.3d 24 (1st Cir. 2004).

18.  As for the use of handcuffs during the stop, the First Circuit has in the past required the government to point to "some specific fact or circumstance that could have supported a reasonable belief that the use of such restraints was necessary to carry out the legitimate purposes of the stop without exposing the law enforcement officers, the public, or the suspect himself, to an undue risk of harm. U.S. v. Acosta Colon, 157 F.3d at 18-19.

19.  Where the police have information that a suspect is currently armed and that a crime involving violence may soon occur, they are justified in using restraints such as handcuffs without causing an investigatory stop to cross over into an arrest. See Flowers v. Fiore, 359 F.3d 24 (1st Cir. 2004).

20.  Other circuits have held that police may draw their weapons without transforming an otherwise valid <u>Terry</u> stop into an arrest.  <u>See</u>, e.g., <u>U.S. v. Alvarez</u>, 899 F.2d 833, 838 (9th Cir. 1990).

21.  The First Circuit has held that, when faced with a report of an armed threat, it is not unreasonable for the officers to execute the Terry stop with their weapons drawn.  <u>Flowers v. Fiore</u>, 359 F.3d 24 (1st. Cir. 2004).

22.  Here, the police were not faced with an armed threat.  They had no report that the Defendant possessed a weapon, only that he might flee if the informant did not answer her phone.  (Presumably, they asked whether the Defendant possessed a weapon, and the response was negative).

23.  The detention at gunpoint, in handcuffs, involving both a pat down search of the outer clothing, and a further search of the contents of the Defendant's pockets, amounted to an arrest, not a <u>Terry</u> type stop.

24.  The treatment of the Defendant, regardless of the label applied to it, intrudes so severely on interests protected by the Fourth Amendment as necessarily to trigger traditional safeguards against illegal arrest.  <u>See</u> <u>Dunaway v. NY</u>, 99 5 Ct. 2248 (1979) (holding that the unlawful arrest, both in design and in execution, was investigatory, an expedition for evidence in the hope that "something might turn up").

25.  Similarly, here the police conducted a <u>Terry</u> stop in search of drugs, not weapons, without probable cause, without a warrant, without exigent circumstances, and without a  report of an armed threat.  The stop so far exceeded the bounds of a traditional pat down as to amount to a formal arrest.

26.  The evidence obtained as a result of the second pat down search of the Defendant, without probable cause to arrest, must be suppressed.

DATED:  July 22, 2015               /s/ Robert A. Levine
                                    _____
                                    Robert A. Levine, Esquire
                                    Bar #3845
                                    Attorney for Defendant
                                    17 South Street
                                    Portland, ME   04101
                                    (207) 871-0036

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have today filed the foregoing <u>DEFENDANT'S MOTION TO SUPPRESS</u> using the CM/ECF system, which will cause a copy to be sent to the AUSA Julia Lipez.

DATED:  JULY 22, 2015               /s/ Robert A. Levine
                                    _____
                                    Robert A. Levine, Esq., Bar #3845
                                    Attorney for Defendant
                                    17 South Street
                                    Portland, ME   04101
                                    (207) 871-0036