UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA

v.                                                          Criminal Case No. 2:15-cr-127-JDL

TODD RASBERRY

DEFENDANT'S RESPONSE TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS

FACTS

On July 15, 2015, Special Agent Paul Wolf of the U.S. DEA spoke with a cooperating source who informed him that a woman was delivering heroin for a drug trafficker named Champagne. At 3:45 p.m., the woman was confronted outside the Clarion Hotel, and detained by police. She provided them with baggies of heroin, and disclosed she was delivering the drugs for Champagne. She disclosed the location of Champagne inside room 109 of America's Best Value Inn in Scarborough. She never disclosed the presence of any weapon in the room, or any possible violence by Champagne, only that he might flee if she did not continue to answer her phone.

Later, the agents attempted to use the woman's key card to enter the room. When that did not work, they knocked on the door several times, without announcing their intentions or identity. When the Defendant answered the door, he was confronted by armed agents at gunpoint. Naturally, he did not resist their entry. He was immediately handcuffed and searched by Officer Andrew Flynn of the Scarborough Police Department. Officer Flynn gave the Defendant a pat down

1

search of his outer clothing for the presence of weapons. He also removed the contents of the Defendant's pockets, including a bandanna tucked into the back of his short pants. No drugs or weapons were found.

Other officers searching the room, also with guns drawn, found no other occupants or drugs. Agent Wolf then returned to the Defendant, to conduct a further search of his person, whereupon drugs were located and seized.

## ARGUMENT

Under ordinary circumstances, when the police have only reasonable suspicion to make an investigatory stop, drawing weapons and using handcuffs and other restrains will violate the Fourth Amendment. Washington v. Lambert, 98 F.3d 1181, 1185 (9th Cir. 1996). Handcuffs are restraints on movement normally associated with arrest. U.S. v. Glenna, 878 F.2d 967, 972 (7th Cir. 1989). It is often said that an investigatory stop constitutes a de facto arrest when a reasonable man in the suspect's position would have understood his situation, in the circumstances then obtaining to be tantamount to being under arrest. U.S. v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994). See also U.S. v. Acosta-Colon, 157 F.3d 9 (1st Cir. 1998). While the general test of the reasonableness of a Terry type stop is "obviously expansive in nature. . .the test presupposes that the seizure under scrutiny was, on the whole, a less intrusive measure than an actual arrest." Id. In other words, a warrantless seizure supported by less than probable cause necessarily falls below the applicable threshold of reasonableness if the seizure was the functional equivalent of an arrest. Id.

What then distinguishes this Terry type stop and frisk from an actual arrest? It clearly did not begin as a consensual encounter, regardless of what the police reports suggest. First, it is clear from the government's response that at least one agent entered the hotel room with his weapon drawn, and was not merely invited to enter at the Defendant's consent. Second, the Defendant was immediately handcuffed while other officers searched the room, again with at least another weapon drawn. Third, though the Defendant was told he was not under arrest, he was subjected to not just one, but two searches of his person, including the emptying of his pockets and all their contents, the removal of his bandanna, and a search that clearly exceeded the scope of a weapons search. The second pat down of the Defendant's person, which the government attempts to justify because the first pat down was merely 'cursory', flies in the face of the facts. The Defendant had already been searched for the presence of a weapon, and now the search was expanding to include the possibility he was hiding drugs, because there were none found in the room itself.

When the government seeks to prove that an investigatory detention involving the use of handcuffs did not exceed the limits of a Terry stop, it must be able to point to some specific fact or circumstance that could have supported a reasonable belief that the use of such restraints were necessary to carry out the legitimate purposes of the stop, without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm. See Acosta-Colon. The mere fact that the Defendant, "by virtue of being a suspected drug trafficker, could have been armed. . .is inadequate to establish that the handcuffing is a reasonably

3

measured response to actual safety concerns resulting from the stop." Id. "To accept that purported justification. . .would therefore be to endorse the use of handcuffs in every investigatory stop initiated upon articulable suspicion of drug trafficking." Id.

It is hard to see how this detention of the Defendant, in a hotel room entered with guns drawn, with handcuffs applied, with not one but two searches of his person, including the emptying of the contents of his pockets, and the removal and search of his empty bandanna, differed at all from an actual arrest. It is hard to see how any individual under these circumstances would not feel constrained to the degree associated with an actual arrest.

While it is clear that officer safety is paramount, so too is the right of citizens to be free from unreasonable searches and seizures, especially in their places of abode. It is fine to say that the connection between drugs and violence is 'legendary', but this does not justify the use of guns and handcuffs on any suspected drug trafficker, especially in the absence of probable cause. The more routine the use of handcuffs and weapons in the course of a Terry type stop, the more meaningless are the words "you are not under arrest." If the Fourth Amendment means anything, it means that an arrest must be supported by probable cause. There is nothing that makes the detention here less intrusive than an actual arrest.

## CONCLUSION

The stop and frisk of the Defendant was tantamount to and indistinguishable from actual arrest, not supported by probable cause. The second pat down of the Defendant's clothing, though resulting in the seizure of the drugs, was not justified

4

by a concern about weapons possession, since the first search, far from cursory in nature, had eliminated the possibility of weapons.  It was in fact a search for drugs, not incident to arrest, and not supported by probable cause.  The drug evidence should be suppressed.

DATED:  SEPTEMBER 8, 2015          /s/ Robert A. Levine
                                   _____
                                   Robert A. Levine, Esquire
                                   Bar #3845
                                   Attorney for Defendant
                                   17 South Street
                                   Portland, ME  04101
                                   (207) 871-0036


CERTIFICATE OF SERVICE

I hereby certify that I have today filed the foregoing DEFENDANT'S RESPONSE TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS using the CM/ECF system, which will cause a copy to be sent to the AUSA Julia Lipez.

DATED:  SEPTEMBER 8, 2015          /s/ Robert A. Levine
                                   _____
                                   Robert A. Levine, Esq., Bar #3845
                                   Attorney for Defendant
                                   17 South Street
                                   Portland, ME  04101
                                   (207) 871-0036