UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | 2:15-cr-00127-JDL |
| TODD RASBERRY, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT TODD RASBERRY'S MOTION TO SUPPRESS**

Todd Rasberry seeks to suppress all evidence obtained as a result of his detention and arrest on July 15, 2015.  ECF No. 17.  He argues that he was unlawfully subject to detention in handcuffs and two pat-down searches during a *Terry* stop, *see Flowers v. Fiore*, 359 F.3d 24, 29 (1st Cir. 2004) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)), that amounted to a formal arrest without a warrant or any circumstances justifying a warrantless arrest.  For the reasons discussed below, I deny Rasberry's motion.

## I.  FACTUAL BACKGROUND

Drug Enforcement Administration ("DEA") Special Agent ("SA") Paul Wolf has been investigating the suspected drug-trafficking activities of an individual known as "Champagne" for three to four years.  In 2014, he determined the individual's identity to be Todd Rasberry.  On July 15, 2015, SA Wolf and other DEA agents, based on information from a cooperating source, located and approached a woman believed to be engaged in drug deliveries for Rasberry, in the area of a hotel in Portland.  The woman possessed bags containing powder consistent with heroin.  The woman told SA Wolf that she worked for a man she knew as "Champ" or "Champagne," that she

had rented Room 109 of a specific motel in Scarborough, and that Champagne was currently in the hotel room. She also told the agent that she believed Champagne was in possession of additional drugs in the room. She gave SA Wolf a key card to the room and consented in writing for it to be searched.

The same afternoon, SA Wolf, DEA Agents Thomas LaPierre and Kris Sullivan, and Officer Andrew Flynn of the Scarborough Police Department ("SPD") arrived at the hotel at around 4:30 p.m. to carry out the search of the room. They were all armed and wearing plain clothes with vests and/or badges identifying themselves as police.[1] SA Wolf, with Officer Flynn and Agent LaPierre behind him, went to the door of Room 109 and tried, unsuccessfully, to open it with the key card. He then knocked on the door, which was then opened by a man who SA Wolf recognized from his prior investigation as Rasberry, and the agents entered the room. SA Wolf told Rasberry that he had written consent to search the room and that Rasberry was being detained but was not under arrest. Officer Flynn handcuffed Rasberry and then frisked him in the area of the center of his back where Rasberry might be able to reach while in handcuffs. The other agents performed a security sweep and then a search of the room. At various points, the officers stepped in and out of the room to make calls, retrieve evidence bags and gloves, and speak to a taxi driver who had arrived outside Room 109.

About twenty minutes after their entry into the room, SA Wolf told Rasberry that he was going to pat Rasberry down for weapons before removing the handcuffs. Rasberry responded that he had already been patted down, and Officer Flynn

---

[1] Agent Sullivan went to cover the window at the back of the building and later entered the room.

2

interjected, stating to Rasberry that the initial frisk was only in the proximity of his hands.  During SA Wolf's pat-down of Rasberry's outer clothing, SA Wolf felt a tennis ball-size object in Rasberry's shorts.  SA Wolf then told Rasberry that he was under arrest and then withdrew a sandwich bag from inside the front of Rasberry's shorts.  The bag contained three bags of heroin and one bag of cocaine.  Rasberry was then taken into custody.

## II.  LEGAL ANALYSIS

Rasberry seeks to suppress all evidence resulting from what he asserts was an unlawful arrest, including the drugs that were found in his possession during SA Wolf's pat-down.  The challenged search and seizure extends from the officers' entry into Room 109 to the time they left the hotel.

The officers made a consensual entry into the hotel room.  SA Wolf had obtained written consent to search the hotel room from the woman who had rented it.  A valid consent authorizes a search without a warrant and probable cause.  *United States v. Laine*, 270 F.3d 71, 74-75 (1st Cir. 2001) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)).

Rasberry's initial detention in the hotel room constituted a valid seizure under the *Terry* doctrine as "a brief stop . . . of an individual to investigate suspected past or present criminal activity" based on "a reasonable and articulable suspicion."  *See United States v. Acosta-Colon*, 157 F.3d 9, 14 (1st Cir. 1998) (citation omitted). Based on the information provided by the woman who had rented the room, and SA Wolf's prior investigation into Rasberry and his suspected drug-trafficking organization, the officers had "a reasonable, articulable suspicion" that Rasberry was engaged in drug

3

possession and distribution, providing a basis to make the initial seizure. *See United States v. Ruidíaz*, 529 F.3d 25, 28 (1st Cir. 2008). For reasons I explain below, the officers also took actions that were "reasonably related in scope to the circumstances which justified the interference." *See United States v. Pontoo*, 666 F.3d 20, 26 (1st Cir. 2011) (citation omitted).

Rasberry contends that his detention, conducted as a *Terry* stop, amounted to an arrest, and points in particular to the use of handcuffs, the weapons carried by the officers, and the two searches of his person. ECF No. 17 at 2-4; ECF No. 27 at 3-4. Determining whether an investigatory stop constituted a *de facto* arrest requires "a fact-specific inquiry into whether the measures used were reasonable in light of the circumstances that prompted the stop or that developed during its course." *Acosta-Colon*, 157 F.3d at 15; *see also United States v. Chaney*, 647 F.3d 401, 409 (1st Cir. 2011) ("[W]e inquire, in light of the totality of the circumstances, whether a reasonable person in the suspect's position would have understood her position 'to be tantamount to being under arrest'") (citation omitted). Here, Rasberry was placed in handcuffs shortly after the officers' entry into the room and remained in handcuffs until his arrest about twenty minutes after the entry. He was also subject to two pat-downs. I conclude, in light of the totality of the circumstances, that the temporary seizure of Rasberry through the use of handcuffs and the other measures taken in the conduct of the investigatory search of the room was reasonably necessary to ensure the officers' safety.

First, the officers' belief that restraints were necessary was reasonable. The relevant information known to them included: Rasberry's criminal history, including

4

drugs and weapons charges; information indicating that he was engaged in drug trafficking, an activity often associated with violence; information that Rasberry had previously used aliases; the statement by the woman who had rented the room that Rasberry might flee if she did not answer his phone calls; knowledge that several months earlier, Rasberry had been arrested in a hotel room where drugs and a gun were found; and the search was being conducted in a confined space with which the officers were unfamiliar, *see* ECF No. 26 at 6.  Considered together, these facts and circumstances "supported a reasonable belief that the use of . . . restraints was necessary to carry out the legitimate purposes of the stop without exposing law enforcement officers, the public, or the suspect himself to an undue risk of harm." *See Acosta-Colon*, 157 F.3d at 18-19; *United States v. Rabbia*, 699 F.3d 85, 92 (1st Cir. 2012). "Officers are permitted to take actions to protect their own safety and the safety of others in the area." *United States v. Mohamed*, 630 F.3d 1, 6 (1st Cir. 2010) (citing *Schubert v. City of Springfield*, 589 F.3d 496, 503 (1st Cir. 2009)).  The officers' unholstering of their weapons for limited periods was likewise a reasonable security measure in the context of this stop.

Second, the twenty-minute duration of the investigatory stop was reasonable, as the officers "diligently pursued a reasonable investigative approach calculated to ensure officer safety and, at the same time, confirm or dispel [their] suspicions." *United States v. Tiru-Plaza*, 766 F.3d 111, 117 (1st Cir. 2014) (quoting *Pontoo*, 666 F.3d at 31).  Over the duration of the search of the room and until Rasberry's arrest, the officers worked continuously to complete their investigation.

Third, valid concerns for the safety of the officers involved also justified the initial limited pat-down and the second pat-down. "[G]enerally, if officers have reason to believe that they are dealing with an armed and dangerous individual, they may take reasonable steps to protect themselves by frisking the individual for weapons." *United States v. Moore*, 235 F.3d 700, 703 (1st Cir. 2000) (citation omitted); *see also Estrada v. Rhode Island*, 594 F.3d 56, 66 (1st Cir. 2010). Because, as Officer Flynn testified, his initial pat-down of Rasberry was limited to the area of Rasberry's back that Rasberry could reach while his hands were handcuffed, SA Wolf's comprehensive pat-down of Rasberry later on was effectively the first complete frisk for weapons. Based on the facts and circumstances noted earlier, SA Wolf held a reasonable suspicion that Rasberry was armed and dangerous, *see United States v. Osbourne*, 326 F.3d 274, 278 (1st Cir. 2003). During the pat-down, SA Wolf felt an object "whose contour or mass makes . . . immediately apparent" its identity as contraband, and which may then be lawfully seized under the "plain-feel" doctrine, *United States v. Proctor*, 148 F.3d 39, 43 (1st Cir. 1998). Alternatively, the discovery of an object in Rasberry's shorts that SA Wolf immediately identified as contraband, together with the other facts and circumstances known to him at the time, gave him a reasonable belief that Rasberry was engaged in drug possession or trafficking, *see United States v. McFarlane*, 491 F.3d 53, 56 (1st Cir. 2007), and therefore probable cause to arrest Rasberry and search him incident to arrest.

6

For the foregoing reasons, Rasberry's motion to suppress is **DENIED**.

**SO ORDERED.**

Dated this 17th day of November, 2015.

                                                  **/s/   JON D. LEVY**
                                                  **U.S. DISTRICT JUDGE**