UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | 2:15-cr-00127-JDL |
| | ) | |
| TODD RASBERRY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

On June 15, 2016, Todd Rasberry pleaded guilty to one count of possession with intent to distribute heroin, in violation of 18 U.S.C.A. § 841(a)(1). On December 2, 2016, Rasberry was sentenced to a term of imprisonment of 138 months, to be followed by a term of supervised release of three years. Rasberry now moves for compassionate release under 18 U.S.C.A. § 3582(c)(1)(A)(i) based on the alleged health risks he faces in federal custody during the COVID-19 pandemic (ECF No. 189). For the reasons that follow, I deny the motion.

**I. LEGAL STANDARD**

The compassionate release statute, as amended by the First Step Act of 2018, Pub. L. No. 115−391, § 603(b), 132 Stat. 5194, 5239−41 (codified at 18 U.S.C.A. § 3582(c)−(d) (West 2020)), permits a court to consider a motion for compassionate release brought by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.A.

§ 3582(c)(1)(A).  Once a court determines that it may consider a defendant's motion, the court may reduce the defendant's sentence if, after considering the factors set forth in 18 U.S.C.A. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i).

Because the policy statement issued by the Sentencing Commission under the compassionate release statute has not been updated since the enactment of the First Step Act, I have previously determined that I should consider the policy statement but need not strictly apply it when deciding whether to grant compassionate release.[1] *See United States v. Calhoun*, No. 2:15-cr-00056-JDL-1, 2020 U.S. Dist. LEXIS 117527, at *3 (D. Me. July 1, 2020) (citing *United States v. Acoff*, Nos. 3:15cr157 (MPS), 3:11cr179 (MPS), 3:09cr073 (MPS), 2020 WL 2781798, at *2 (D. Conn. May 29, 2020) and *United States v. Brooks*, No. 07-cr-20047-JES-DGB, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020) (collecting authorities)).

## II. ANALYSIS

Rasberry argues that compassionate release is warranted because the conditions at FCI Danbury and his medical history place him at a high risk of severe illness or death from COVID-19.  Before evaluating the merits of Rasberry's motion

---

[1] Under the earlier version of the compassionate release statute, the policy statement provided that compassionate release should only be granted upon a finding that the defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C.A. § 3142(g)." U.S. Sentencing Guidelines Manual § 1B1.13(2) (U.S. Sentencing Comm'n 2018).  Additionally, an application note to the policy statement delineated four categories of "extraordinary and compelling reasons" warranting compassionate release.  *Id.* cmt. n.1.  The first three categories concerned the defendant's medical condition, age, and family circumstances, respectively.  *See id.*  The fourth was a catchall category encompassing reasons "other than, or in combination with" those outlined in the first three categories, "[a]s determined by the Director of the Bureau of Prisons."  *Id.*

2

for compassionate release, I address the threshold question of whether Rasberry has pursued administrative remedies, which is a prerequisite to judicial action.

## A.     Administrative Remedies

As noted above, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.A. § 3582(c)(1)(A). Courts have referred to this provision as a "hybrid requirement" that defendants "either exhaust or wait thirty days." *See, e.g.*, *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020). I have previously determined that the hybrid requirement is a non-jurisdictional claim-processing rule. *See Calhoun*, 2020 U.S. Dist. LEXIS 117527, at *5 (citing *United States v. Ramirez*, Criminal Action No. 17-10328-WGY, 2020 WL 2404858, at *7 (D. Mass. May 12, 2020)). Although courts generally must enforce the hybrid requirement if the Government properly raises an objection based on a defendant's failure to comply with it, such objections can be waived or forfeited.[2] *Id.* at *5–6 (citing *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) and *United States v. Reyes-Santiago*, 804 F.3d 453, 458, 478 (1st Cir. 2015)).

Rasberry filed a compassionate release request with the warden at FCI Danbury on April 6, 2020, and did not receive a response. Rasberry did not wait

---

[2] I do not address whether any equitable exceptions may excuse a defendant's failure to comply with the claim-processing rule at issue. *See Fort Bend Cty.*, 139 S. Ct. at 1849 n.5; *Ramirez*, 2020 WL 2404858, at *7 (describing the split of authorities on this issue).

thirty days before filing a motion for compassionate release on his own behalf on April 28, 2020. However, Rasberry filed an amended petition on May 15, 2020, after the Court appointed counsel to represent him. Thirty days had elapsed from the date of Rasberry's request to the warden by the time he filed his amended motion. The Government accepts the date of Rasberry's amended motion as the relevant date for purposes of calculating the thirty-day period, waiving any argument that Rasberry has not satisfied § 3582(c)(1)(A)'s hybrid requirement. *See* ECF No. 191 at 1 n.1. Pursuant to the Government's waiver, I proceed to the merits of Rasberry's motion.

**B.   The Merits**

    **1.   Extraordinary and Compelling Reasons**

As explained above, a court may only grant compassionate release if it finds that "extraordinary and compelling reasons" warrant a reduction in the defendant's sentence. 18 U.S.C.A. § 3582(c)(1)(A)(i). Rasberry asserts that extraordinary and compelling reasons exist in part because he is likely to contract COVID-19 at FCI Danbury. Several courts have found that the risk of contracting COVID-19 at FCI Danbury is high. *See, e.g.*, *United States v. Hilow*, No. 15-cr-170-JD, 2020 WL 2851086, at * 4 (D.N.H. June 2, 2020); *see also United States v. Flores*, No. 19-CR-6163L, 2020 WL 3041640, at *1 (W.D.N.Y. June 8, 2020) (describing the situation at FCI Danbury as "disturbing"). In fact, as recognized in *Martinez-Brooks v. Easter*, No. 3:20-cv-00569 (MPS), 2020 WL 2405350 (D. Conn. May 12, 2020), "FCI Danbury was one of only three federal prisons specifically identified by Attorney General William Barr in an April 3, 2020 memo to the Director of the Bureau [of] Prisons ordering immediate action to place vulnerable inmates on home confinement." *Id.* at

4

\*4.  "In the memo, Attorney General Barr noted the 'significant levels of infection' at FCI Danbury . . . ." *Id.*  On May 12, 2020, the court in *Martinez-Brooks* found that, "at a time when public health officials are counseling strict adherence to social distancing practice, most inmates at FCI Danbury live in close contact with between 50 and 140 other inmates, in a facility with a serious, active COVID-19 outbreak," *id.* at \*21, and that "effective social distancing" at FCI Danbury is "virtually impossible," *id.* at \*4.

It appears that the situation at FCI Danbury has improved in the past two months.  Statistics gathered and updated daily by the Bureau of Prisons indicate that ninety-two inmates and sixty-one staff at FCI Danbury have recovered from COVID-19, and that there are no active cases of COVID-19 among inmates or staff in the facility.[3]  *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ ("COVID-19 Cases" section, "Full breakdown and additional details" hyperlink) (last visited July 14, 2020).  This recent data suggest that Rasberry is not currently at a heightened risk of contracting COVID-19 at FCI Danbury, which weighs against a finding of extraordinary and compelling reasons.

Rasberry also argues that extraordinary and compelling reasons exist because he is at a heightened risk of severe illness or death from COVID-19 based on ongoing complications from a gunshot wound to his chest in 2014.  Rasberry's medical records confirm that he was shot multiple times on February 10, 2014, and was hospitalized for sixteen days for treatment of the resulting injuries, including a pneumothorax, or

---

[3] According to Bureau of Prisons medical records, FCI Danbury began mass testing inmates for COVID-19 in May.  Rasberry tested negative for COVID-19 on May 28, 2020.

collapsed lung. The medical records from his 2014 hospitalization suggest that the collapsed lung was resolved without complications.

However, Rasberry filed an affidavit stating that he has experienced shortness of breath ever since his lung collapsed in 2014. His affidavit is corroborated by the presentence investigation report, which indicated that Rasberry complained of difficulty breathing in 2016, and by records of Rasberry's medical treatment at FCI Danbury over the past year. Rasberry received a chest X-ray in December 2019 after reporting chest pain. The chest X-ray revealed bullet fragments in Rasberry's respiratory tract. In May 2020, Rasberry was seen by a paramedic for complaints of lung pain and was referred to a physician for a pulmonary follow-up. At the follow-up in June 2020, Rasberry reported difficulty taking deep breaths, and the examining physician found that Rasberry had diminished breath sounds and that his lungs were "diminished in [the] bases," especially on the right side. The physician prescribed a corticosteroid inhaler and ordered several laboratory tests, a follow-up chest X-ray, and an EKG. The EKG indicated that Rasberry had bradycardia, which is a decreased heart rate. The Pulmonary/Respiratory Clinic at FCI Danbury is overseeing Rasberry's care.

The COVID-19 guidance issued by the Centers for Disease Control and Prevention ("CDC") does not conclusively indicate whether Rasberry's current pulmonary and respiratory symptoms—bradycardia, difficulty taking deep breaths, and bullet fragments in the respiratory tract—place him at a heightened risk of severe illness from COVID-19. However, portions of the guidance suggest that Rasberry might be at risk. For example, the guidance states that people with

6

"pulmonary fibrosis (having damaged or scarred lung tissues)" may be at an increased risk of severe illness from COVID-19. *Coronavirus Disease 2019 (COVID-19): People of Any Age with Underlying Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited July 9, 2020). Although Rasberry has not identified medical records diagnosing him with pulmonary fibrosis or specifically discussing his lung tissue, common sense suggests that Rasberry's lung tissue may be damaged or scarred based on the 2014 gunshot wound to his chest and the continuing presence of bullet fragments in his respiratory tract.

Additionally, the CDC guidance advises that the "prolonged use of corticosteroids" can weaken the immune system and might increase a person's risk of severe illness from COVID-19. *Id.* Rasberry was prescribed a corticosteroid inhaler in June 2020 and was directed to use it twice a day for 120 days. The CDC does not specifically define "prolonged use" under the guidance, but it is at least possible that this dosage could weaken Rasberry's immune system and put him at a heightened risk of severe illness from COVID-19.

Ultimately, because the evidence regarding Rasberry's medical condition is in equipoise, I conclude that Rasberry has not established that he is at risk of severe illness from COVID-19. Additionally, I find that Rasberry is not presently at a heightened risk of contracting COVID-19 at FCI Danbury. Accordingly, I conclude that extraordinary and compelling reasons do not support a reduction in his sentence.

### 2. 18 U.S.C.A. § 3553(a) Sentencing Factors

In any event, the sentencing factors set forth in 18 U.S.C.A. § 3553(a) weigh against a sentence reduction. Rasberry was convicted of one count of possession with intent to distribute heroin, in violation of 18 U.S.C.A. § 841(a)(1). Specifically, Rasberry was discovered in a hotel room possessing enough heroin to make approximately 150 retail sales. Moreover, this was not an isolated incident. Rather, it was part of Rasberry's role as a leader of a drug trafficking organization operating in southern Maine. The organization's activities, which spanned several months at least, involved multiple individuals trafficking heroin across state lines, sometimes hidden in their bodies, and multiple trap houses where drug sales took place.

In imposing the original sentence in this case, I applied the factors set forth in 18 U.S.C.A. § 3553(a). Those factors include the nature and circumstances of the offense, the personal history and characteristics of the defendant, the kinds of sentences available, the Sentencing Guidelines, the need to avoid unwarranted sentencing disparities, and the need to provide restitution. Further, Section 3553(a) requires that the sentence reflect the seriousness of the offense that was committed, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes, and provide the defendant with needed training, medical care, and other treatment in the most effective way.

At sentencing, I found that Rasberry was engaged in a very serious, ongoing criminal enterprise, which likely would have resulted in the frequent distribution of large quantities of heroin into the community. Additionally, I found that Rasberry had a significant criminal history. Based on these facts, I emphasized the need for

the sentence imposed to reflect the seriousness of the offense, afford adequate deterrence, and protect the public. Additionally, because Rasberry's personal history was marked by severe abuse, neglect, and an untreated mental health condition, I determined that the sentence imposed needed to provide Rasberry with mental health treatment and vocational training.

I further found at sentencing that, despite his heartbreaking personal history, Rasberry had strong and positive relationships with his fiancée and stepson; that he had taken responsibility for his family, including his six-year-old son; and that he had taken advantage of services offered to him in pretrial detention. Based on these findings, I noted my belief that Rasberry was capable of rehabilitation and my interest in imposing a punishment that would allow him to play a meaningful role as a parent after his release. After weighing all these factors, I imposed a term of imprisonment of 138 months—just below the Sentencing Guidelines' minimum recommendation of 140 months—to be followed by three years of supervised release. Additionally, because Rasberry had a history of substance abuse, I recommended that he be considered for and complete the 500-Hour Comprehensive Drug Treatment Program during his term of imprisonment. At the conclusion of sentencing, I emphasized my judgment that he needed "a significant period" of incarceration to turn his life around.

I now revisit the Section 3553(a) factors to determine whether granting compassionate release is appropriate. As of today, Rasberry has served approximately forty-three percent of his sentence. In prison, he has completed drug education as well as fourteen educational and vocational courses. He has not had any

disciplinary incidents in the nearly five years he has been incarcerated. These are promising indicators that Rasberry is rehabilitating himself in prison. However, I stand by my previous finding that a term of imprisonment of 138 months—eleven and a half years—is necessary to reflect the seriousness of Rasberry's offense, to afford adequate deterrence, and to protect the public. The term he has served to date—nearly five years—does not satisfy those purposes of the punishment I imposed. Additionally, Rasberry has not yet engaged in mental health treatment or completed the 500-Hour Comprehensive Drug Treatment Program, which suggests that his rehabilitation could be advanced by his continued incarceration. Although a risk of severe illness or death from COVID-19 would weigh in favor of release, Rasberry has not established that he currently faces such a risk, as discussed above. Thus, after considering all the Section 3553(a) factors, I conclude that a reduction of Rasberry's sentence is not warranted.

### III.  CONCLUSION

For the reasons explained above, Rasberry's motion for compassionate release (ECF No. 189) is **DENIED**.

**SO ORDERED.**

Dated: July 14, 2020

                                                                                /s/ JON D. LEVY  
                                          **CHIEF U.S. DISTRICT JUDGE**